PS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DERRICK HAMILTON,

        Plaintiff,

    v.

DANIEL F. MARTUCELLO III.,
Commissioner New York State
Department of Corrections and
Community Supervision (DOCCS);
ANTHONY ANNUCCI, Acting
Commissioner, DOCCS; CATHY
SHEEHAN Deputy Commissioner and
Counsel, DOCCS; T. MCCARTHY,
Superintendent, Auburn State Prison
(Auburn); G. SCHENK, Deputy
Superintendent of Programs, Auburn; S.
PURCELL, Sergeant, Auburn; M.
PETTIGRASS, ORC, Auburn; C.J.
KLASEN, Prison Guard, Auburn;
JAKAUB, Prison Guard, Auburn;
TANNER, Prison Guard, Auburn;
MCCINTOSH, Superintendent, Clinton
State Prison (Clinton); KAMAAL
RICHARDS, Chaplain, Clinton; LECLAIR,
Captain, Clinton; AHERN, Prison Guard,
Clinton; JOHN DOE 1, Prison Guard,
Clinton, JOHN DOE 2, Prison Guard,
Clinton; JANE DOE, Prison Guard,
Clinton; HARRIGAN, Deputy
Superintendent, Clinton; SPENCER,
Prison Guard, Upstate Prison (Upstate);
VARGAS, Prison Guard, Upstate; JULIA
WOLCOTT, Superintendent Attica State
Prison (Attica); G. POFF; First Deputy
Superintendent, Attica; L.
MIDDLEBROOK, Deputy Superintendent,
Attica

        Defendants.

---

24-CV-6500-CJS
Order

*Pro se* Plaintiff, Derrick Hamilton, is a prisoner confined at the Auburn Correctional Facility. He sues 29 defendants in their individual and official capacities for acts occurring between 2020 and 2024 while he was incarcerated at four correctional facilities: Auburn Correctional Facility (Auburn), Clinton Correctional Facility (Clinton), Upstate Correctional Facility (Upstate), and Attica Correctional Facility (Attica). The case was filed in the United States District Court for the Southern District of New York and was subsequently transferred to the United States District Court for the Northern District of New York ("Northern District.") Docket Item 3. On August 15, 2024, Plaintiff filed an Amended Complaint asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986, alleging that he has been subjected to violations of the First, Eighth, Fifth, and Fourteenth Amendments of the United States Constitution as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA," 42 U.S.C. 2000cc), the New York State Constitution, and the New York State Humane Alternatives to Long-Term Solitary Confinement Act ("HALT"). Docket Item 27. This pleading is the operative pleading.

By order dated August 15, 2024, pursuant to Rule 21 of the Federal Rules of Civil Procedure and 28 U.S.C. 1404(a), the Northern District severed defendants Julia Wolcott ("Wolcott"), Attica Superintendent, G. Poff ("Poff"), Attica First Deputy Superintendent, and L. Middlebrook ("Middlebrook"), Attica Deputy Superintendent and the claims against them and transferred same to this District. Docket Item 26. The Northern District noted that it took no position regarding Plaintiff's claims against Anthony Annucci, former New York State Department of Corrections and Community Supervision ("DOCCS") Acting Commissioner, Cathy Sheehan, DOCCS Deputy Commissioner and Counsel ("Sheehan"), and Daniel Martuscello, DOCCS Acting Commissioner, pertaining to

2

Plaintiff's conditions of confinement at Attica and deferred analysis of these claims to this Court. Docket Item 26 at 17, 23-24, and n.4. That Court, however, did not specifically sever and transfer those claims to this District and dismissed these claims against Annucci, Sheehan, and Martuscello that arose at Clinton, Auburn or Upstate on the ground that Plaintiff did not allege their personal involvement in the alleged unconstitutional conditions of confinement. *Id.* This Court makes the same finding here, but grants Plaintiff leave to amend his Amended Complaint to assert an Eighth Amendment conditions of confinement claim against Annucci, Sheehan, and Martuscello, if there are facts supporting such a claim. *See* Fed. R. Civ. P. 11.

Plaintiff alleges that Wolcott violated his First and Eighth Amendment rights by knowingly placing him in segregated confinement in retaliation for filing grievances against prison officials. Docket Item 27 at 79. Plaintiff asserts that Poff violated his First, Eighth, and Fourteenth Amendment rights when he failed to investigate Plaintiff's concerns regarding his segregated confinement and required him to remain in same. *Id.* Plaintiff claims that Middlebrook violated his Eighth and First Amendment rights when he failed to remedy the constitutional violations to which Plaintiff was subjected by permitting him to remain in segregated confinement. *Id.* at 81.

For the reasons that follow, Plaintiff's claims against Wolcott, Middlebrook, and Poff will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless he files an amended complaint as set forth below.

3

## DISCUSSION

Plaintiff has paid the filing fee. However, due to his status as a "prisoner," 28 U.S.C. 1915A(c), this Court must screen that part of the Amended Complaint severed and transferred here.

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). However, leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I.    THE AMENDED COMPLAINT

In evaluating a complaint or an amended complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d

4

197, 200 (2d Cir. 2004), even a *pro se* complaint "must plead 'enough facts to state a

claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x

807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In

other words, although a *pro se* complaint need not provide every last detail in support of

a claim, it must allege some facts that support the claim.  *See id.* (concluding that district

court properly dismissed *pro se* complaint under section 1915(e)(2) because complaint

did not meet pleading standard in *Twombly* and *Iqbal*).  And even *pro se* pleadings must

meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see*

*Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004), and "give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Accepting the factual allegations as true and drawing all inferences in Plaintiff's

favor, the Amended Complaint alleges the following.  Plaintiff identifies four correctional

facilities in which he was housed between 2020 and 2024; Auburn, Upstate, Clinton, and

Attica.  Docket Item 27 at 7, 52, 62, 70.  While incarcerated, Plaintiff has filed several

grievances and lawsuits against DOCCS officials and has written letters to DOCCS

officials, members of the New York State Legislature, and Governor Hochul complaining

of the conditions in the prisons.  *Id.* at 12; Docket Item 27-1 at 103, 112, 119, 121, 124,

131.  Plaintiff maintains that he has been confined to the Special Housing Unit ("SHU") or

5

has been placed under segregated confinement, in violation of the HALT Act.[1]  Plaintiff is 55 years old, and is "categorically barred" from segregated confinement.  Docket Item 27 at 58-59, 65.

Plaintiff was transferred to Attica on August 24, 2022.  *Id.* at 69.  At some point, Plaintiff was placed under segregated confinement, which Plaintiff defines as being confined to a cell 23 hours per day with one hour of recreation.  *Id.*

On March 19, 2024, Plaintiff spoke with Middlebrook in the law library and asked why inmates were subjected to inhumane treatment such as segregated confinement status without any disciplinary sanctions and without due process.  *Id.* at 72.  It is unclear whether Plaintiff was under segregated confinement at this time; however, a liberal reading of the Amended Complaint alleges that he likely was.  *Id.* at 71.  Plaintiff explained to Middlebrook that he was a member of "special population" who could not be subjected to segregated confinement due to age under the HALT Act.  *Id.*  Middlebrook directed Plaintiff to DOCCS's rules and regulations and took no further action.  *Id.*

On May 13, 2024, Plaintiff also spoke with Wolcott and provided her with the same information that he gave Middlebrook.  *Id.* at 73.  Wolcott informed Plaintiff that Attica operated under "emergency administrative orders" due to gang activity, and therefore, inmates could be placed in segregated confinement.  *Id.* at 73-74.  Wolcott also "confirmed to [Plaintiff] while on rounds that she is the person responsible as

---

[1]  The Humane Alternatives to Long-Term Solitary Confinement Act (the "HALT Act"), a New York state law that took effect on March 31, 2022, amends New York Correction Law § 137 to, among other things, limit the use of segregated confinement for all incarcerated persons to fifteen consecutive days.

superintendent for ultimately imposing the extralegal and extreme 23-1 segregated solitary confinement conditions on [Plaintiff]." *Id*. at 73.

On March 23, 2024, Plaintiff wrote a letter to Martuscello regarding DOCCS's violations of the HALT Act; specifically, Attica was in violation of the HALT Act by permitting segregated confinement as applied to members of the general population. Docket Item 27-1 at 165. Plaintiff named Middlebrook as complicit in Attica's acts. *Id*. at 166. Plaintiff alleges that Poff interviewed him regarding this letter and that Poff was "extraordinarily informed as to the constitutional wrongs being done to [Plaintiff]." Docket Item 27 at 75. Poff, however, had "not used any of his full knowledge of [Plaintiff's] degradation and suffering to change any part of [Plaintiff's] situation for the better." *Id*.

In April of 2024, Plaintiff attempted to contact "an associate" by email, describing the prison conditions to which he was subjected, but his email was never sent as it was flagged by Wolcott for being obscene. *Id*. at 76. Plaintiff states that he was in segregated confinement for 20 months and remained there as of the date the Amended Complaint was filed. *Id*. at 80.

## II.    SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation

7

of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To assert liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted). [2]

### A. First Amendment – Retaliation and Mail Interference

#### 1. Retaliation

Throughout the Complaint, Plaintiff asserts that being placed in solitary or segregated confinement, was retaliation for the filing of grievances against prison officials. Plaintiff alleges that Wolcott, as Superintendent of Attica, was responsible for putting him and other inmates into segregated confinement.

To state a First Amendment retaliation claim under § 1983, "a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that

---

[2] Initially, Plaintiff sues all defendants in their individual and official capacities. The suits against defendants in their official capacities are dismissed as they are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (finding that the Eleventh Amendment bar extends to agencies and officials sued in their official capacities).

the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)); *see also Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). The Second Circuit has held that in the prison context "adverse action" is defined objectively, as retaliatory conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon*, 58 F.3d at 872-73. The Second Circuit Court of Appeals has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491.

Throughout Plaintiff's Complaint, he asserts, without any factual support, that there is a civil conspiracy across all of DOCCS to place him and other inmates in solitary confinement because of his grievances against officials and his suits filed in the federal courts. The Northern District dismissed those conspiracy claims when it screened those claims pleaded in the Amended Complaint that were not severed and transferred to this district. (ECF No. 26 at 37-38). There is no dispute that filing a lawsuit is constitutionally

protected conduct as is the filing of a grievance. *See Espinal v. Goord*, 558 F.3d 119, 128-29 (2d Cir. 2009); see also *Davis*, 320 F.3d at 352-53. The only comparable action Plaintiff took while at Attica was writing to Acting Commissioner Martuscello on March 23, 2024, outlining DOCCS's alleged violations of the HALT Act. *See* Docket Item 27-1 at 165-167. The letter does not reference Wolcott, and it appears that Plaintiff was already in segregated confinement when he wrote the letter.

Plaintiff's allegations regarding his commitment to segregated confinement at Attica and that this confinement was retaliatory by Wolcott are nebulous. He alleges no facts to explain which grievance or suit he filed for which Wolcott retaliated against him. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."); *see also Engles v. Bennett*, No. 14-CV-1214 (TJM/ATB), 2017 WL 1194728, at *9-10 (W.D.N.Y. March 10, 2017); *see also Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010) (dismissing retaliation claim where Plaintiff failed to allege when the underlying grievances were filed that caused the retaliation); *Edwards v. Bezio,* No. 08-CV-256(LEK/RFT), 2010 WL 681369, at *3 (N.D.N.Y. Feb. 24, 2010) (dismissing retaliation claim based on allegation that plaintiff suffered adverse action for "past and present" grievances and lawsuits, noting that plaintiff's "general references to grievances and lawsuits he allegedly filed are not sufficient to establish that he was engaged in protected conduct"). Notably, Plaintiff does not allege that the letter was the basis for the retaliation. Accordingly, the retaliation claim against Wolcott is dismissed but with leave to file an

amended complaint that alleges, if it can, facts supporting Plaintiff's claim of retaliation against Wolcott and that she was personally involved in the alleged retaliatory acts.

The same conclusion may be reached with regard to Middlebrook. The only allegations Plaintiff has stated against Middlebrook are that Middlebrook was aware that Plaintiff was in segregated confinement at some point and did not make efforts release him. Docket Item 27 at 80. Therefore, the retaliation claim against Middlebrook is also dismissed but with leave to amend.

Plaintiff asserts that Poff retaliated against him because of the letter written to Martuscello on March 23, 2024, by permitting him to remain in segregated confinement. *Id*. at 79. On an unspecified date, Poff interviewed Plaintiff regarding the letter, and Poff "failed to remedy the constitutional wrongs being perpetrated against [Plaintiff] . . . in retaliation against [Plaintiff's] expression of protected speech and his challenging of DOCCS's policies and conditions of confinement." *Id*. at 80. Plaintiff has failed to plausibly allege that Poff engaged in any adverse action against Plaintiff in retaliation for Plaintiff's protected conduct. *See Rasheen*, 356 F. Supp. 3d at 244. Moreover, while Plaintiff need not plead facts in great detail, his allegation that Poff "failed to remedy the constitutional wrongs . . . against [Plaintiff]" without some factual allegations to explain the basis for that conclusion is insufficient to render it plausible that Poff was personally involved in the alleged constitutional deprivations. *See Nash v. McGinnis*, 585 F. Supp.

11

2d 455, 460 (W.D.N.Y. 2008). Therefore, Plaintiff's retaliation claim against Poff is also dismissed but with leave to amend.

### 2. Mail interference

Plaintiff claims that Wolcott intercepted an email that he wrote to "an associate," as it was flagged for obscenity. a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351 (citations omitted). However, a prisoner's right to receive and send mail may be regulated to an extent. *See, e.g., Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997). "Restrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Davis*, 320 F.3d at 351 (quoting *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986)). Courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. *See Davis*, 320 F.3d at 351. Prisoners have a First Amendment right to receive legal mail without interference and maintain the right to be present when their legal mail is opened. *See Wolff v. McDonnell*, 418 U.S. 539, 574-76 (1974). Importantly, "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis,* 320 F.3d at 351. Further, there is no indication that the email was "legal mail," he has failed

to plausibly allege that the interception of one email was a violation of his First Amendment free speech rights. *See id.* at 350.

### B. Eighth Amendment - Deliberate Indifference and Cruel and Unusual Punishment

Plaintiff claims that Wolcott, Poff, and Middlebrook acted with deliberate indifference in violation of the Eighth Amendment by knowingly allowing him to remain in segregated confinement, despite "knowing that [Plaintiff] belonged to a legally defined 'Special Population' categorically banned from segregated confinement." Docket Item 27 at 79-81.

"[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not meet this standard. *Id.* at 838. The Eighth Amendment prohibits cruel and unusual punishments, but "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, conditions of confinement "may constitute cruel and unusual punishment only when they result in unquestioned and serious deprivations of basic human needs . . . [which], alone or in combination, may deprive inmates of a minimal civilized measure of life's necessities." Davidson v. Conway, 318 F. Supp. 2d 60, 62-63 (W.D.N.Y. 2004) (quoting *Rhodes*, 452 U.S. at 347) (internal quotations marks omitted).

"Confinement in a prison or in an isolation cell is a form of punishment subject to

13

scrutiny under Eighth Amendment standards." *Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015). However, "'[n]ormal' conditions of SHU confinement do not amount to an Eighth Amendment violation." *Hattley v. Goard,* No. 02 Civ. 2339(WHP), 2006 WL 785269, at *6 (S.D.N.Y. March 27, 2006) (citing *Shannon v. Selsky,* 04 Civ. 1939 (NRB), 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10, 2005), and *Gulley v. Roach,* No. 02-CV-908S, 2004 WL 2331922, at *11 (W.D.N.Y. Oct. 15, 2004). The duration and conditions of confinement are relevant factors to the Eighth Amendment inquiry. *Gonzalez*, 802 F.3d at 224.

At various points while incarcerated at Auburn, Upstate, Clinton, and Attica, Plaintiff was placed in either SHU or in segregated confinement. It is noted that, while Plaintiff was at Clinton, he was told that he was not in SHU, but in either a Mental Health placement or an "RRU" (Residential Rehabilitation Unit).[3] Docket Item 27, 59-60. Plaintiff has alleged that, because he is 55 years or older, regardless of any administrative orders Attica had put in place, he should never have been put in segregated confinement.[4] *See*

---

[3] This may suggest that DOCCS was acting in compliance with the HALT Act, which creates RRUs for inmates who cannot enter segregated confinement due to age or other special status. See N.Y. Correction Law § 2(34).

[4] To the extent Plaintiff may be raising a state law claim alleging a violation of the HALT Act, this Court would not have jurisdiction over such a claim. *See* N.Y. Corr. Law, § 24. New York Correction Law § 24, divests federal district courts of subject matter jurisdiction over state law claims for money damages that are asserted against DOCCS employees who were acting in the scope of their employment when the alleged violation occurred. Section 24 "mandate[s] that state law claims for damages for acts or omissions committed by DOCCS employees within the scope of their employment be brought exclusively in the New York Court of Claims as claims against New York State." *DeMeo v. Koenigsmann*, No. 11 CIV. 7099 HBP, 2015 WL 1283660, at *18 (S.D.N.Y. Mar. 20, 2015); *accord Flint v. Jun*, 541 F. Supp. 3d 284, 288 (W.D.N.Y. 2021) (collecting cases).

N.Y. Correction Law §§ 2(33), 137(6)(h)-(i).

The Eighth Amendment claims against Wolcott, Poff, and Middlebrook must be dismissed but with leave to amend. As an initial matter, the Second Circuit has held that a violation of a state law alone is not cognizable under section 1983. *See Pollnow v. Glennon*, 757 F2d 496, 501 (2d Cir. 1985). Further, Plaintiff has failed to assert facts to allege that Wolcott, Middlebrook, and Poff were personally involved in any constitutional deprivation. Bare allegations of the failure to follow a state law or prison regulation does not constitute personal involvement in a violation of federal constitutional standards. *See Walker v. Capra*, 22-CV-7638 (VB), 2024 WL 21938, at *5 (S.D.N.Y. Jan. 2, 2024) (finding vague allegations that defendants violated the HALT Act were insufficient to establish personal involvement under section 1983 even where plaintiff spoke to prison officials face-to-face regarding same).

Plaintiff has failed to allege any facts regarding the conditions of his segregated confinement or a serious deprivation of basic human needs. Therefore, the Eighth Amendment claims against all three defendants are dismissed but with leave to amend.

### C. Fourteenth Amendment Claim against Poff

Plaintiff claims that Poff violated his rights under the Fourteenth Amendment because he deprived Plaintiff of his liberty interest by allowing him to be subjected to 20 months of segregated confinement. ECF No. 27 at 80. In order to state a procedural due process claim, Plaintiff must first show that there was a liberty interest that required protection. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). To that end, Plaintiff must (1) "establish that the confinement or restraint complained of creates an 'atypical and significant hardship. . . in relation to the ordinary incidents of prison life,'" and (2)

"establish that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint'," *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)). In assessing whether the discipline imposed rises to this level, courts consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)).

As discussed above, even if Plaintiff has alleged a Fourteenth Amendment deprivation of liberty interest, he has not alleged Poff's personal involvement in the violation of that interest without due process. Plaintiff's only allegation regarding Poff is that he "was extraordinarily informed as to the constitutional wrongs being done . . . and has not to date used any of his full knowledge . . . to change any part of [Plaintiff's] situation for the better." Docket Item 27 at 75. A supervisory official's failure to respond to a complaint or grievance is insufficient to assert personal involvement under section 1983. *See e.g., Lopez v. Chappius*, No. 17-CV-06305, 2021 WL 859384, at *2 (W.D.N.Y. 2021) (noting that it is "well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find the defendant was personally involved in the deprivation alleged" and that "the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement of a supervisor in the denial of a constitutional right"); see also *Rivera v. Goord*, 119 F. Supp. 2d 237, 344 (S.D.N.Y.

2000). Therefore, the Fourteenth Amendment claim against Poff is dismissed but with leave to amend.

### D. First Amendment – Establishment Clause

Plaintiff does not name Marcia Stewart as a defendant in this action, but liberally construed, Plaintiff's Complaint alleges a First Amendment Establishment Clause claim against Stewart, a Rastafari chaplain at Attica. *See* Docket Item 27 at 74. Plaintiff alleges that, on November 2, 2022, Stewart "admitted that she had conspired with DOCCS to circumvent and violate the Constitution and Bylaws Ecclesiastical Tenets and Principles of Mystical Rastafari Spirituality and the ARK Communion and allowed DOCCS to violate the Establishment Clause by claiming a nonexistent authority to grant DOCCS the privilege and pseudo right to establish the criterion for membership within the ARK." *Id.* Stewart allowed "charlatan" inmates to "self-identify" as members of the Rastafari, which Plaintiff states is improper as membership within the Rastafari is based upon membership "by right." *Id.* at 75. Plaintiff also references affidavits from Paul Osborne, a former Rastafari chaplain and Raymond Smith, an ARK member. Id. at 145-154, 155. The affidavits indicate that ARK members disagreed with Stewart's practice of allowing "charlatans" to join the Rastafari and express indignation with the replacement of Osborne as the chaplain. *Id.* at 151-52. While the argument is somewhat muddied, Plaintiff alleges that Stewart violated the Establishment Clause by promoting a "pseudo Rastafarian" sect which permitted "charlatans" to join.

"In the prison context, where prison policies "control practically every aspect of inmates' lives, accommodating the free exercise of the religion of choice by inmates necessarily involves some involvement by the government with religion." *Cardew v.*

17

*Bellnier*, No. 09-CV-775, 2010 WL 7139218, at \*15 (N.D.N.Y. Dec. 9, 2010). "In order to permit inmates to freely exercise their religion, *some* entanglement [between the government and religion] is necessary." *Rossi v. Fischer*, No. 13-cv-3167, 2015 WL 769551, at \*12 (S.D.N.Y. Feb. 24, 2015) (quoting *Muhammad v. City of New York Dep't of Corr.*, 904 F. Supp. 161, 198 (S.D.N.Y. 1995) (emphasis in original)).    The Establishment Clause guarantees at a minimum that the government may not "coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (citing *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984).

Plaintiff has alleged no facts to assert that Stewart had promoted or precluded him from practicing his or a particular religion. Rather, Plaintiff simply disagrees with Stewart's ideology as chaplain and claims that "prior to [Plaintiff's arrival,] . . . Attica's chaplain, staff, and administration had begun pushing divergent sects of inmates and charlatans into the ARK." Docket Item27 at 74. Further, this Circuit has determined that, in military contexts, similar to penal contexts, where participation is voluntary, by "leaving the practice of religion solely to the individual . . . who is free to worship or not as he chooses without any fear of any discipline or stigma," there is no violation of the Establishment Clause. *Katcoff v. Marsh*, 755 F.2d 223, 231-32 (2d Cir. 1985). Moreover, "at least one court has held that " 'the mere fact that a prison chaplain is of one particular faith' does not constitute an Establishment Clause violation." Muhammad, 904 F. Supp. at 198 (quoting *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir.1995) (quoting the decision of the district court below); *see also Johnson–Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir.1988) (stating that "[p]risons are entitled to employ chaplains and need not employ chaplains of each and

18

every faith to which prisoners might happen to subscribe but may not discriminate against minority faiths except to the extent required by the exigencies of prison administration"). Plaintiff's allegations are too vague and conclusory to allege a violation of the Establishment Clause, and insofar as Plaintiff makes these claims against Stewart, they are dismissed but with leave to amend.

## III.   STATE CONSTITUTIONAL CLAIMS

Plaintiff alleges violations of the New York State Constitution, article 1, sections 9-11; freedom of speech and of the press, freedom to assemble and petition, and the state's guarantee of equal protection under the law against all three defendants.  Docket Item 27 at 79-81.

District courts in this Circuit maintain the "common view" that "there is no right of action under the New York State Constitution for claims that can be brought under § 1983." *Gounden v. City of New York*, 14-CV-7411 (BMC), 2015 WL 5793625, at *5 n.3 (E.D.N.Y. Oct. 2, 2015) (acknowledging "common view").  "[W]here a complaint alleges no theories of liability that are cognizable exclusively under the New York State Constitution, any claims brought under the state constitution are ordinarily dismissed." *Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 171 (W.D.N.Y. 2020) (quoting *Talarico v. Port Auth. Of New York & New Jersey*, 367 F. Supp. 3d 161, 171

(S.D.N.Y. 2019). Plaintiff's state constitutional claims could have been brought under § 1983, and therefore, they are all dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims against Wolcott, Poff, and Middlebrook will be dismissed under 1915A(b) unless Plaintiff files a second amended complaint no later than 45 days after this Order is dated in which he includes the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.[5] However, Plaintiff's claims based on violations of the New York State Constitution and the HALT Act are dismissed without leave to amend. Plaintiff is also granted leave to amend the Amended Complaint to assert an Eighth Amendment conditions of confinement claim only against Annucci, Sheehan, and Martuscello. Plaintiff is advised that an amended complaint is intended to **completely replace** the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (*quoting Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's second

---

[5] Plaintiff is further advised that he has been granted leave to amend only those claims as discussed above. A district court has the inherent authority to dismiss claims that exceed a leave to amend in violation of a court's order. *See, e.g., Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2013 WL 5549495, at *5 (E.D.N.Y. Oct. 8, 2013). Should Plaintiff fail to obey this Court's order, any new claims that he may add in the second amended complaint that exceed the leave granted herein will be dismissed.

amended complaint must include all of the allegations Wolcott, Poff, Middlebrook, Annucci, Sheehan, and Middlebrook so that the second amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file a second amended complaint as directed, the amended complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff is further forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

### ORDER

In light of the above, it is hereby,

ORDERED that Plaintiff is granted leave to file an amended complaint as directed above no later than **45 days after this Order is dated**; and it is further

ORDERED that Plaintiff's claims based on violations of the New York State Constitution and the HALT Act are dismissed without leave to amend; and it is further

ORDERED that the Clerk of the Court is directed to send to Plaintiff with this order a copy of the amended complaint, Docket Item 27, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that in the event Plaintiff fails to file a second amended complaint as directed above no later than **45 days after this Order is dated**, the amended complaint shall be dismissed with prejudice without further order of the Court; and it is further

ORDERED that in the event the amended complaint is dismissed because Plaintiff has failed to file a second amended complaint no later than **45 days after this Order is dated**, the Clerk of the Court shall close this case as dismissed with prejudice without further order; and is it further

ORDERED that in the event the amended complaint is dismissed because Plaintiff has failed to file a second amended complaint no later than **45 days after this Order is dated**, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   *FEB 28*          , 2025
                Rochester, New York


HON. CHARLES J. SIRAGUSA
UNITED STATES DISTRICT JUDGE

22